```
            IN THE UNITED STATES DISTRICT COURT FOR THE
                   SOUTHERN DISTRICT OF ALABAMA
                         SOUTHERN DIVISION
```

DAN J. QUALE,                         :

        Plaintiff,     :

v.                                    :   CIVIL ACTION NO. 09-0519-CG-M

UNIFUND CCR PARTNERS, et al.,         :

        Defendants.    :


REPORT AND RECOMMENDATION

This federal question action was referred to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B), and is before the Court on the Motion to Dismiss filed by Defendant, Unifund CCR Partners ("Unifund") on September 9, 2009. (Doc. 6). After consideration of the pleadings, and for the reasons set out below, it is recommended that Defendant's Motion to Dismiss be denied as to Count One of the Complaint and granted as to Counts Two and Three of the Complaint. (Docs. 1, 6).

I. FACTUAL AND PROCEDURAL BACKGROUND

On August 11, 2009, Plaintiff filed this action, *pro se*, against Defendant Unifund,[1] alleging that: (1) Unifund violated the Fair Debt Collection Practices Act ("FDCPA") by failing to provide Plaintiff validation of his debt and reporting derogatory

---

[1] Plaintiff has also sued National City Card Services. (Doc. 1). However, the Motion to Dismiss concerns only Defendant Unifund.

information about the debt to Experian and Innovis credit reporting agencies (Count One); (2) Unifund violated the Fair Credit Reporting Act ("FCRA") by failing to verify Plaintiff's debt and reporting erroneous information about the debt to Experian and Innovis (Count Two); and (3) Unifund violated the FCRA by failing to notify Experian and Innovis that the alleged debt was in dispute (Count Three).  (Doc. 1 at 2-3).

According to Plaintiff, on or about December 26, 2007, Defendant Unifund, a debt collector, contacted him by mail indicating that it owned or was servicing Plaintiff's debt.  (Doc. 1 at 2).  Plaintiff responded to Defendant on January 3, 2008, disputing the debt and requesting validation by affidavit within thirty days.  (Id.).  Plaintiff never received validation of the debt from Defendant.  Instead, Defendant reported the debt to two credit reporting agencies, Experian and Innovis, and did not notify the agencies that the debt was in dispute.  (Id. at 2-3).  Plaintiff claims that Defendant's conduct violated the FDCPA and the FCRA.

On September 9, 2009, Unifund filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), arguing that: (1) Plaintiff's FDCPA claim based on Unifund's failure to provide validation of the debt is due to be dismissed because Plaintiff does not allege that Unifund attempted to collect the debt after receiving Plaintiff's request for validation; and (2) Plaintiff's FCRA claims are due to be dismissed because Plaintiff has no

private right of action for inaccurate reporting.  (Doc. 6, att. 1 at 5-7).  Defendant's Motion to Dismiss is now before the Court.

## II. STANDARD OF REVIEW

"[W]hen considering a Rule 12(b)(6) motion to dismiss for failure to state a claim, the court construes the complaint in the light most favorable to the plaintiff and accepts all well-pled facts alleged by [the plaintiff] in the complaint as true."  Sinaltrainal v. Coca-Cola Co., 578 F.3d 1252, 1260 (11th Cir. 2009).  "Although it must accept well-pled facts as true, the court is not required to accept a plaintiff's legal conclusions."  Id. (citing Ashcroft v. Iqbal, 556 U.S. __, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009)).

> In evaluating the sufficiency of a plaintiff's pleadings, we make reasonable inferences in Plaintiff's favor, "but we are not required to draw plaintiff's inference." Aldana v. Del Monte Fresh Produce, N.A., Inc., 416 F.3d 1242, 1248 (11th Cir. 2005). Similarly, "unwarranted deductions of fact" in a complaint are not admitted as true for the purpose of testing the sufficiency of plaintiff's allegations.  Id.; see also Iqbal, 129 S. Ct. at 1951 (stating conclusory allegations are "not entitled to be assumed true").
>
> A complaint may be dismissed if the facts as pled do not state a claim for relief that is plausible on its face. See Iqbal, 129 S. Ct. at 1950 (explaining "only a complaint that states a plausible claim for relief survives a motion to dismiss"); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 561-62, 570, 127 S. Ct. 1955, 1968-69, 1974, 167 L. Ed. 2d  929 (2007) (retiring the prior "unless it appears beyond doubt that the

>    plaintiff can prove no set of facts"
>    standard).  In <u>Twombly</u>, the Supreme Court
>    emphasized a complaint "requires more than
>    labels and conclusions, and a formulaic
>    recitation of the elements of a cause of
>    action will not do."  <u>Twombly</u>, 550 U.S. at
>    555, 127 S. Ct. at 1965.  Factual allegations
>    in a complaint need not be detailed but "must
>    be enough to raise a right to relief above
>    the speculative level on the assumption that
>    all the allegations in the complaint are true
>    (even if doubtful in fact)."  <u>Id.</u> at 555, 127
>    S. Ct. at 1964-65 (internal citations and
>    emphasis omitted).
>
>    . . . A complaint must state a plausible
>    claim for relief, and "[a] claim has facial
>    plausibility when the plaintiff pleads
>    factual content that allows the court to draw
>    the reasonable inference that the defendant
>    is liable for the misconduct alleged."  <u>Id.</u>
>    The mere possibility the defendant acted
>    unlawfully is insufficient to survive a
>    motion to dismiss.  <u>Id.</u>  The well-pled
>    allegations must nudge the claim "across the
>    line from conceivable to plausible."
>    <u>Twombly</u>, 550 U.S. at 570, 127 S. Ct. at 1974.

<u>Sinaltrainal</u>, 578 F.3d at 1260-61.

Because Plaintiff is proceeding *pro se*, the Court will liberally construe his pleadings.  See <u>Harris v. United Auto. Ins. Group, Inc.</u>, 579 F.3d 1227, 1231 n.2 (11th Cir. 2009) (citing <u>Tannenbaum v. United States</u>, 148 F.3d 1262, 1263 (11th Cir. 1998) ("Pro se pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed.").  However, the Court will not serve as "*de facto* counsel" for Plaintiff nor "rewrite an otherwise deficient pleading in order to sustain an action."  <u>GJR Invs., Inc. v. County of Escambia, Fla.</u>, 132 F.3d 1359, 1369 (11th Cir.

1998).

## III. DISCUSSION

As discussed above, Plaintiff sues Defendant Unifund for violations of the FDCPA and the FCRA. The Court will consider Defendant's Motion to Dismiss as it relates to each of Plaintiff's claims.

A. <u>Plaintiff's FDCPA claims</u>.

The Fair Debt Collection Practices Act (15 U.S.C. § 1692, *et seq*.) "was enacted to eliminate unscrupulous debt collection practices of consumer debts." <u>In re Martinez</u>, 266 B.R. 523, 531 (Bankr. S.D. Fla. 2001) (citing 15 U.S.C. § 1692).[2]  Consistent with this goal, § 1692g(b) requires, in part:

> (b) If the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) of this section that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector

---

[2] Section 1692 provides, in part:
(a) Abusive practices. There is abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors. . . .(e) Purposes. It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses.

>       obtains verification of the debt or a copy of
>       a judgment, or the name and address of the
>       original creditor, and a copy of such
>       verification or judgment, or name and address
>       of the original creditor, is mailed to the
>       consumer by the debt collector. . . . .

According to Plaintiff's Complaint, he sent Unifund a request for validation, or verification, of his alleged debt on January 3, 2008, within the thirty-day period described in § 1692g(a).[3]  To date, he has not received verification of the debt.  (Doc. 1 at 2).

Defendant Unifund responds in its Motion to Dismiss that it was only required to provide Plaintiff verification of his debt

---

[3] Section 1692g(a) provides:
>   (a) Notice of debt; contents
>   Within five days after the initial communication with a
>   consumer in connection with the collection of any debt,
>   a debt collector shall, unless the following
>   information is contained in the initial communication
>   or the consumer has paid the debt, send the consumer a
>   written notice containing--
>   (1) the amount of the debt;
>   (2) the name of the creditor to whom the debt is owed;
>   (3) a statement that unless the consumer, within thirty
>   days after receipt of the notice, disputes the validity
>   of the debt, or any portion thereof, the debt will be
>   assumed to be valid by the debt collector;
>   (4) a statement that if the consumer notifies the debt
>   collector in writing within the thirty-day period that
>   the debt, or any portion thereof, is disputed, the debt
>   collector will obtain verification of the debt or a
>   copy of a judgment against the consumer and a copy of
>   such verification or judgment will be mailed to the
>   consumer by the debt collector; and
>   (5) a statement that, upon the consumer's written
>   request within the thirty-day period, the debt
>   collector will provide the consumer with the name and
>   address of the original creditor, if different from the
>   current creditor.

if it continued to attempt to collect the debt, which, Defendant argues, Plaintiff has not alleged.  Defendant is only partially correct.

"If a debtor disputes the debt amount, § 1692g(b) requires a debt collector to cease collection actions until the debt collector verifies the accuracy of the amount claimed."  <u>Hepsen v. J.C. Christensen & Assocs., Inc.</u>, 2009 WL 3064865, *6 (M.D. Fla. 2009).  "Where a debt collector ends collection activities pursuant to § 1692g(b), the debt collector is not obligated to send a separate validation of the debt to the debtor."  <u>Id.</u>  <u>See also</u> <u>Purnell v. Arrow Fin. Servs., LLC</u>, 303 Fed. Appx. 297, 303-04  (6th Cir. 2008) (unpublished) ("§ 1692g(b) does not require the debt collector to validate the debt at all, as long as it ceases any collection activity . . . . That is, the debt collector has a choice: it either may choose not to verify the debt and abandon its collection efforts, or it may decide to verify the debt and resume collection activities once the requested validation has been provided.").

Contrary to Defendant's assertion, however, Plaintiff does allege that, after receiving his request for validation, Defendant failed to validate the debt and, instead, reported it to Experian and Innovis without notifying the agencies that the debt was disputed.[4]  (Doc. 1 at 2-3).  Whether such conduct

---

[4] Plaintiff alleges in Count One of the Complaint that Unifund "entered derogatory information into the Plaintiff's

constitutes a "collection" activity in violation of § 1692g(b) of the FDCPA has not been addressed in this circuit.  However, some courts have indicated that it may constitute a collection tactic prohibited by § 1692g(b).

For example, in <u>Purnell</u>, 303 Fed. Appx. at 304 n.5, the Sixth Circuit recognized that the reporting of a disputed debt to a credit bureau without verification of the debt may constitute "collection activity" in violation of § 1692g.  The court relied on an FTC Staff Opinion Letter, 1997 WL 33791232, Dec. 23, 1997, which states:

> I. "Is it permissible under the FDCPA for a debt collector to report, or continue to report, a consumer's charged-off debt to a consumer reporting agency after the debt collector has received, but not responded to, a consumer's written dispute during the 30-day validation period detailed in § 1692g?"  As you know, Section 1692g(b) requires the debt collector to cease collection of the debt at issue if a written dispute is received within the 30-day validation period until verification is obtained.  Because we believe that reporting a charged-off debt to a consumer reporting agency, particularly at this stage of the collection process, constitutes "collection activity" on the part of the collector, our answer to your question is No.  Although the FDCPA is unclear on this point, we believe the reality is that debt collectors use the

---

Experian and Innovis Credit Reports."  (Doc. 1 at 2).  Because Plaintiff is proceeding *pro se*, the Court liberally construes Plaintiff's allegation that Defendant "entered derogatory information" to include the fact alleged elsewhere in the Complaint that, when Defendant reported the debt, it did not notify the credit reporting agencies that the debt was disputed.  (<u>Id.</u> at 3).

>    reporting mechanism as a tool to persuade
>    consumers to pay, just like dunning letters
>    and telephone calls.  Of course, if a dispute
>    is received after a debt has been reported to
>    a consumer reporting agency, the debt
>    collector is obligated by Section 1692e(8) to
>    inform the consumer reporting agency of the
>    dispute.

Id., 1997 WL 33791232, at *1.[5]

The district court in Purnell granted summary judgment on Plaintiff's § 1692g(b) claim on the basis that it was time-barred, but the Sixth Circuit disagreed and reversed.  The Sixth Circuit "assume[d] without deciding" that the debt collector's reporting of the debt to the credit reporting agency after receiving, but not responding to, a request for verification constituted "collection activity."[6]  Purnell, 303 Fed. Appx. at 304 n.5.  The court remanded the case to the district court for further proceedings.  Id.

In another case, Campbell v. Credit Bureau Sys., Inc., 2009 WL 2922852 (E.D. Ky. 2009), the court likewise recognized that the "reporting of a debt to a credit bureau may constitute a 'collection activity' under the FDCPA in the Sixth Circuit."  Id. at *9.  However, in Campbell, the plaintiff had not timely

---

[5] Similarly, in Sullivan v. Equifax, Inc., 2002 WL 799856, *4-5 (E.D. Pa. 2002) (unpublished), the court noted that "reporting a debt to a credit reporting agency is 'a powerful tool designed, in part, to wrench compliance with payment terms . . . .'"  Id. (quoting Robert J. Hobbs, Fair Debt Collection, § 5.5.10, p. 170-71 (3d ed. 1996)).

[6] The debt collector in Purnell similarly failed to report that the debt was disputed.  Id., 303 Fed. Appx. at 299.

requested verification of his debt; therefore, the court held: "even if reporting can violate the FDCPA, no violation took place here." Id. ("reporting to a consumer reporting agency *after* receipt of, but *before* response to, a *timely* dispute under § 1692g might not be permissible.") (emphasis in original) (citing Purnell).  See also Semper v. JBC Legal Group, 2005 WL 2172377, *4 (W.D. Wash. 2005) (unpublished) ("Until the debt was verified, all further attempts to collect on the debt, including defendants' September 3rd letter *and any subsequent reports to the credit reporting agencies, violated § 1692g(b).*") (emphasis added).

In support of its Motion to Dismiss, Defendant cites Breed v. Nationwide Ins. Co., 2007 WL 1408212, *1 (W.D. Ky. 2007) (unpublished), in which the court rejected the plaintiff's argument that "reporting an item to a credit bureau" constitutes an attempt to collect a debt.  The court stated: "Plaintiff cites and the Court can find no authority for this apparently novel proposition."  Id.  However, in Breed, the court did not address whether the plaintiff had requested verification of the debt, whether the debt collector had reported information about the debt before providing verification, or whether the debt collector had notified the credit reporting agency that the debt was in dispute.  Thus, the court's decision in Breed sheds little light on the instant action.

The court is also aware of Jackson v. Genesys Credit Mgmt.,

2007 WL 2113626, *3 (S.D. Fla. 2007) (unpublished), in which the court noted that § 1692g(b) "does not appear to prohibit reporting of information to credit reporting agencies." (Emphasis added).  However, in <u>Jackson</u>, unlike the instant action, the plaintiff did not request verification of the debt. Therefore, § 1692g(b)'s requirement that the debt collector cease collection efforts was not triggered, and, thus, the reporting of information to credit reporting agencies could not have been prohibited on that basis.

Having considered this issue at length, the Court finds the reasoning of the Sixth Circuit in <u>Purnell</u> persuasive.  The Court finds that Plaintiff's allegations that Defendant, after receiving Plaintiff's request for verification, failed to verify the debt and, instead, reported it to Experian and Innovis without notifying the agencies that the debt was disputed, are sufficient, at this stage of the proceedings, to state a claim under § 1692g(b) of the FDCPA.

In addition to stating a claim under § 1692g(b), Plaintiff's allegations in Count One also state a claim under § 1692e, which provides, in pertinent part:

> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt.  Without limiting the general application of the foregoing, the following conduct is a violation of this section:
>     . . .
> (8) Communicating or threatening to

> communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed.

In Gilmore v. Account Mgmt., Inc., 2009 WL 2848278, *7 (N.D. Ga. 2009), the court held in a similar case:

> Plaintiff further states a claim that Defendant violated the FDCPA when it notified the credit reporting agency that Plaintiff owed Trimlawn $1,010 but failed to notify the credit reporting agency that Plaintiff disputed the debt.  The FDCPA is violated when the debt collector "communicates or threatens to communicate to any person's (sic) credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed." 15 U.S.C. § 1692e(8). Plaintiff claims that he disputed the debt in writing via certified mail and that Defendant signed off on the certified mail receipt. (Compl.¶¶ 29-34).  Accordingly, the allegations of the Complaint, assumed true, show that Defendant should have known the debt was disputed prior to reporting the unpaid debt to the credit reporting agency. Therefore, the Complaint states a claim for Defendant's failure to notify the credit reporting agency that Plaintiff disputed the debt.

See also Acosta v. Campbell, 2006 WL 3804729, *7  (M.D. Fla. 2006) (unpublished) ("A debt collector may be liable under the FDCPA if it fails to communicate to a consumer reporting agency that a debt is disputed.").

As discussed above, Plaintiff alleges in Count One that, after he notified Defendant that he disputed the debt, Defendant "entered derogatory information" into his Experian and Innovis

credit reports, which the Court has construed to include Defendant's failure to notify Experian and Innovis that the debt was disputed, as alleged elsewhere in the Complaint. (Doc. 1 at 2-3). These allegations are sufficient to state a claim for violation of § 1692e of the FDCPA.

For each of the reasons set forth above, Defendant's Motion to Dismiss Count One of Plaintiff's Complaint alleging violations of the FDCPA is due to be denied.

B. <u>Plaintiff's FCRA claims</u>.

In Count Two of his Complaint, Plaintiff alleges that Defendant violated the Fair Credit Reporting Act, 15 U.S.C. §§ 1681, *et seq.*, by failing to validate or verify his debt and reporting erroneous information about the debt to Experian and Innovis. (Doc. 1 at 3). In Count Three, Plaintiff alleges that Defendant violated the FCRA by failing to notify Experian and Innovis that the debt was in dispute. (<u>Id.</u>). Defendant argues in its Motion to Dismiss that Counts Two and Three of Plaintiff's Complaint are due to be dismissed because Plaintiff has no private right of action against it for furnishing inaccurate information to a credit reporting agency. (Doc. 6, att. 1 at 5-6). Defendant is correct.

Section 1681s-2(a)[7] of the FCRA prohibits furnishers of

---

[7] Section 1681s-2(a) provides, in part:
   (a) Duty of furnishers of information to
       provide accurate information

credit information from providing false information.  "However, the statute explicitly bars private suits for violations of this provision."  Peart v. Shippie, 2009 WL 2435211, *1 (11th Cir. 2009) (unpublished)[8] (citing 15 U.S.C. § 1681s-2(c);[9] 15 U.S.C. § 1681s(c)(1)(B) (allowing states to bring an action for

---

> (1) Prohibition
>    (A) Reporting information with actual knowledge of errors
>    A person shall not furnish any information relating to a consumer to any consumer reporting agency if the person knows or has reasonable cause to believe that the information is inaccurate.
>    (B) Reporting information after notice and confirmation of errors
>    A person shall not furnish information relating to a consumer to any consumer reporting agency if--
>      (I) the person has been notified by the consumer, at the address specified by the person for such notices, that specific information is inaccurate; and
>      (ii) the information is, in fact, inaccurate.

[8] "Pursuant to Eleventh Circuit Rule 36-2, unpublished opinions are not considered binding precedent, but may be cited as persuasive authority."  Lanier Constr., Inc. v. Carbone Props. of Mobile, LLC, 253 Fed. Appx. 861, 865, 2007 WL 3307384, *3 n.5 (11th Cir. 2007) (unpublished).

[9] Section 1681s-2(c) states that the civil liability provisions for willful and negligent noncompliance with the FCRA, i.e., §§ 1681n and 1681o, do not apply to any violation of subsection (a) of § 1681s-2, except that the states may bring an action for violations.  It makes no provision, however, for a private right of action against a furnisher of information for providing false or inaccurate information to a credit reporting agency.

violations)); see also Green v. RBS Nat'l Bank, 288 Fed. Appx. 641, 642, 2008 WL 2957118, *1 (11th Cir. 2008) (unpublished) ("The FCRA . . . does not provide a private right of action" to redress a violation of § 1681s-2(a)); Antoine v. State Farm Mut. Auto. Ins. Co., 2009 WL 2496290, *8 (M.D. Fla. 2009) ("[T]here is no private right of action under 15 U.S.C. § 1681s-2(a)(1)(A) and (B)."); Riley v. General Motors Acceptance Corp., 226 F. Supp. 2d 1316, 1319 (S.D. Ala. 2002) ("There is no private cause of action under 15 U.S.C. § 1681s-2(a). This is clear from the language of 15 U.S.C. § 1681s-2(c). . . . [and] is more clearly stated in § 1681s-2(d): 'Subsection (a) of this section shall be enforced exclusively under section § 1681s of this title by the Federal agencies and officials and the State officials identified in that section.'").

On the other hand, § 1681s-2(b)of the FCRA requires furnishers of credit information to investigate the accuracy of reported information upon receiving notice of a dispute pursuant to § 1681i(a)(2).[10] Section 1681s-2(b)of the FCRA can be

---

[10] Section 1681s-2(b) provides, *inter alia*, that, upon receiving notice of a dispute *from a consumer reporting agency* pursuant to § 1681i(a)(2), the furnisher of information must conduct an investigation and report the results of the investigation to the agency. The investigation requirement placed on the furnisher of information in § 1681s-2(b)is triggered by § 1681i(a)(2), which requires the consumer reporting agency, if notified of a dispute by a consumer or a reseller, to promptly notify the furnisher of information of all relevant information received from the consumer or reseller regarding the dispute.

enforced through a private right of action, "but only if the furnisher received notice of the consumer's dispute *from a consumer reporting agency*." Peart, 2009 WL 2435211 at *1 (citing 15 U.S.C. § 1681s-2(b)(emphasis added); see also Green, 288 Fed. Appx. at 642 ("The FCRA does provide a private right of action for a violation of § 1681s-2(b), but only if the furnisher received notice of the consumer's dispute from a consumer reporting agency."). Although Plaintiff alleges that Defendant failed to validate the accuracy of the debt (Doc. 1 at 3), which the Court construes as an allegation of failure to investigate the accuracy of the reported information, Plaintiff does not allege that Unifund received notice of the dispute from a consumer reporting agency, as required by § 1681s-2(b).

As it stands, Counts Two and Three of Plaintiff's Complaint fail to state a claim under the FCRA for two reasons.  First, Plaintiff has no private right of action under § 1681s-2(a) for Defendant reporting false or inaccurate information to Experian and Innovis.  Second, although there is a private right of action under § 1681s-2(b) for failing to investigate the accuracy of the reported information, this provision is triggered "only if the furnisher received notice of the consumer's dispute from a consumer reporting agency," Green, 288 Fed. Appx. at 642, which Plaintiff has not alleged.  Therefore, Defendant's Motion to Dismiss Counts Two and Three of Plaintiff's Complaint is due to be granted.

CONCLUSION

Based on the foregoing, it is recommended that Defendant's Motion to Dismiss Count One of Plaintiff's Complaint be denied; that Defendant's Motion to Dismiss Counts Two and Three of Plaintiff's Complaint be granted; and that Counts Two and Three of Plaintiff's Complaint be dismissed without prejudice.[11]

MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS
AND RESPONSIBILITIES FOLLOWING RECOMMENDATION
AND FINDINGS CONCERNING NEED FOR TRANSCRIPT

1.   Objection.  Any party who objects to this recommendation or anything in it must, within ten days of the date of service of this document, file specific written objections with the clerk of court. Failure to do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the magistrate judge. *See* 28 U.S.C. § 636(b)(1)(C); *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. Unit B, 1982)(*en banc*).  The procedure for challenging the findings and recommendations of the magistrate judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a "Statement of Objection to Magistrate Judge's Recommendation" within ten days after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection. The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation

---

[11] This action will proceed on Plaintiff's claims asserted in Count One of the Complaint for violations of §§ 1692g(b) and 1692e of the FDCPA.

should be reviewed *de novo* and a different disposition made. It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection. Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2. <u>Transcript (applicable where proceedings tape recorded)</u>. Pursuant to 28 U.S.C. § 1915 and Fed. R. Civ. P. 72(b), the magistrate judge finds that the tapes and original records in this action are adequate for purposes of review. Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

DONE this 21st day of October, 2009.

<u>s/BERT W. MILLING, JR.</u>
UNITED STATES MAGISTRATE JUDGE
